[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: JANSEN ROGAN'S MOTION FOR SUMMARY JUDGMENT (#314)
CT Page 375
This litigation concerns the construction of Evergreen Woods Continuing Care retirement community in North Branford, Connecticut (the project). The plaintiff is Shoreline Care Limited Partnership (Shoreline). Shoreline, the owner and operator of the retirement community, contracted with the defendant Weitz Company, Inc. (Weitz), obligating Weitz to provide "general contractor services" with respect to Phase I of the project, and subsequently contracted with Weitz on April 30, 1991, for similar services pertaining to Phase II of the project.[1] Weitz contracted with Janazzo Heating Air-Conditioning (Janazzo), to install the HVAC system.
Shoreline hired Technical Planning Associates, Inc. (TPA) as its architect on the project[2], and TPA contracted with the defendant Jansen Rogan Consulting Engineers, P.C. (Jansen Rogan), to provide mechanical and electrical engineering consulting services.
The operative complaint is the fifth amended complaint dated January 15, 2001.[3] The first, second, third, fourth, fifth and sixth counts constitute the complaint currently pending against Jansen Rogan, claiming, respectively, that this defendant negligently failed to properly design, supervise, inspect and approve the construction of the HVAC system; negligently misrepresented that the HVAC system was installed in accordance with applicable codes and good engineering standards; fraudulently misrepresented that the HVAC system was installed in accordance with applicable codes and good engineering standards; materially breached its contract with TPA by failing to, among other things, properly design, supervise and inspect and approve the construction of the project's HVAC system; was unjustly enriched when it received payment for consulting engineering services not properly rendered; and engaged in conduct that violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et. seq. ("CUTPA").
The court previously has granted a motion for summary judgment by Weitz on the eighth count, after concluding that all of Shoreline's breach of contract claims arising out of Phase II of the project were barred by the doctrine of res judicata because Shoreline and Weitz had previously arbitrated all such claims and no damages were assessed against Weitz.[4]
The court also granted a motion for summary judgment by Janazzo on the tenth, eleventh and twelfth counts of the fourth amended complaint, which counts were all directed at Janazzo and contained all claims asserted by Shoreline against Janazzo.[5] For the following reasons, judgment enters on the fourth and sixth counts of the amended complaint, dismissing them as a matter of law. CT Page 376
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in light most favorable to the non-moving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Citations omitted.) Appleton v.Board of Education, 254 Conn. 205, 209 (2000). "A material fact is a fact that will make a difference in the result of the case. . . . the facts at issue are those alleged in the pleadings. . . ." (Citations omitted, internal quotation marks omitted.) Mountaindale Condominium Associationv. Zappone, 59 Conn. App. 311, 315 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Noland v. Borkowski, 206 Conn. 495, 500 (1988).
The defendant Jansen Rogan has moved for summary judgment on the following grounds:
1. As to the negligence claims set forth in the first and second counts, Jansen Rogan asserts that these claims are barred by the economic loss rule.
2. As to the fraudulent misrepresentation claim contained in the third count, Jansen Rogan argues that this claim is barred by the economic loss rule and further asserts that no material facts exist supporting a claim that a false representation was made or that Shoreline was induced to act.
3. As to the fourth count asserting a breach of contract, Jansen Rogan contends that Shoreline has failed to plead any facts demonstrating that the parties to the TPA/Jansen Rogan contract intended that Jansen Rogan should assume a direct obligation to Shoreline, and absent such obligation, the fourth count fails as a matter of law.
4. As to the fifth count, claiming unjust enrichment, Jansen Rogan argues that this claim is barred by the economic loss rule.
5. As to the CUTPA claims asserted in the sixth count, Jansen Rogan contends that CUTPA is inapplicable to design professionals, and in addition, argues that the claim is barred by the economic loss rule. CT Page 377
Shoreline has opposed the motion for summary judgment.
The economic loss rule is a judicially created doctrine barring recovery in tort when the relationship between the parties is a contractual one and the only losses alleged are economic. The Connecticut Supreme Court in Flagg Energy Development Corp. v. General Motors Corp.,244 Conn. 126 (1998), applied the economic loss rule to a Uniform Commercial Code (UCC) sale of goods case on the basis that "[w]e agree with the holdings of cases in other jurisdictions that commercial losses arising out of the defective performance of contracts for the sale of goods cannot be combined with negligent misrepresentation." Id., 153. While the present case does not involve the sale of goods under the UCC, the analysis and application of the economic loss rule are equally applicable. The thrust of the common law economic loss rule is that in the absence of privity of contract between the plaintiff and the defendant, or, in the absence of an injury to the plaintiff's person or property, the plaintiff may not recover in tort for a purely economic loss.Connecticut Mutual Life Ins. Co. v. N.Y. N.H.R.R. Co., 25 Conn. 265
(1856). The economic loss rule has been applied in other jurisdictions to preclude contractor tort claims against design professionals for economic loss. See Lincoln Park West Condominium Association v. Mann, Gin, Edel Frasier, Ltd., 555 N.E.2d 346, 351 (Ill.Sup.Ct. 1990) and Floor CraftFloor Covering, Inc. v. Parma Community General Hosp. Association,560 N.E.2d 206, 212 (Ohio Sup.Ct. 1990). Also see Widett v. UnitedStates Fidelity Guaranty Co., 815 F.2d 885, 887 (2nd Cir. 1987).
The economic loss rule does not bar Shoreline's complaints against Jansen Rogan, however, because Shoreline has asserted claims of property damage against this defendant, including loss of hot water heaters in the basement area, elevator equipment malfunctions, and the cost of extensive drywall and wall covering repair and replacement. These property loss claims are sufficient to overcome application of the economic loss rule.
The motion for summary judgment as to the first and second counts is denied.
The allegations in the third count are based on fraud. The essential elements of a claim for fraudulent misrepresentation are "(1) that a representation was made as to a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." (Internal quotation marks omitted.) Citino v. Redevelopment Agency, 51 Conn. App. 262, 275 (1998). Shoreline's fraudulent misrepresentation claim against Jansen Rogan in CT Page 378 the third count of the amended complaint is supported by an evidentiary foundation demonstrating the existence of a genuine issue of material fact. The record before the court contains the award of the arbitrators[6] on the Phase II arbitration, and the award contains the following findings of fact, in pertinent part:
 (1) The HVAC system, as designed and described in the Plans and Specifications, is inconsistent with the objective of the Contract Documents to provide an adequate heating, air-conditioning and ventilating systems.
 (2) Although the installation was not declared by some public authority to be a violation of pertinent codes and regulations, it may well fail to meet their requirements, not by failure to perform, but by design.
 (3) These facts should have been known by Jansen Rogan, the designer, by TPA Design Group, the Architect, as well as the Respondent [Weitz] and its subcontractor [Janazzo].
Award of the arbitrators executed January 18, 1996, page 2. These findings raise material and unsettled issues of fact as to whether any representations by Jansen Rogan were fraudulent or innocent and whether Shoreline acted in reasonable reliance on such representations. The motion for summary judgment as to the third count is denied.
Shoreline's fourth count contains a breach of contract claim based on the TPA/Jansen Rogan contract to which Shoreline was not a party. Shoreline alleges a third party beneficiary status which would entitle it to seek damages based upon an intended obligation to Shoreline by the contracting parties.[7] In its motion, Jansen Rogan relies on a specific provision of its contract[8] at article 9.7, providing that: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Architect or Consultant [Jansen Rogan]." The contract also provides at page 2 that "[e]xcept as authorized by the Architect, all communications between the Consultant and the Owner or other consultants for the Project shall be forwarded through the Architect." This language is exclusive as opposed to inclusive of persons outside of the contracts' four corners.
The Connecticut Supreme Court in Gazo v. City of Stamford, 255 Conn. 245
(2001), recently restated the law with respect to determination of third CT Page 379 party beneficiary status:
 The ultimate test to be applied . . . is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party . . . and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claim of a third party beneficiary . . . we emphasize that the only way a contract could create a direct obligation between a promissor and a third party beneficiary we have to be, under our rule, because the parties to the contract so intended.
(Citations omitted; quotation marks omitted.) Id., 261. The law requires that both contracting parties must intend to confer enforceable rights in a third party. Grigerik v. Sharpe, 247 Conn. 293, 311-12 (1998).
In Gateway Co. v. DiNoia, 232 Conn. 223, (1995), our Supreme Court noted: "The intent to confer a benefit is irrelevant to the determination of whether Gateway was a third party beneficiary. We must instead evaluate whether Grant and DiNoia intended that DiNoia assume a direct obligation to Gateway." Id., 231. Where there is definitive contract language, the determination of what the parties intended by their contract commitments is a question of law. Mulligan v. Rioux,229 Conn. 716, 740 (1994). The parties to the TPA/JR contract deliberately excluded in their writing any future attempt to create a contractual relationship or cause of action in favor of any third party. The motion for summary judgment as to the fourth count is granted.
The motion for summary judgment as to the fifth count, claiming unjust enrichment, is denied because the economic loss rule cannot be applied in this case, in which the plaintiff has asserted property damage.
In the sixth count, Shoreline seeks to recover under CUTPA against Jansen Rogan. In Haynes v. Yale-New Haven Hospital, 243 Conn. 17
(1997), the Connecticut Supreme Court determined that CUTPA was inapplicable to professional services with respect to a medical professional. This court has applied the Haynes rule previously to strike a claim against an architect in Amity Regional School District #5 v.Atlas Construction Co., Superior Court, complex litigation docket, judicial district of Waterbury, Docket No. 0153388 (July 26, 2000, CT Page 380McWeeny, J.) (27 Conn.L.Rptr. 605); and also with respect to an architect in John Cruet, Jr. v. Robert Carroll, Superior Court, complex litigation docket, judicial district of Waterbury, Docket No. 0166704 (November 27, 2001, McWeeny, J.). Trial court judges have rejected CUTPA claims asserted against other professionals, including accountants and engineers. See The Advest Group, Inc. v. Arthur Anderson, LLP, Superior Court, complex litigation docket, judicial district of Hartford-New Britain at New Britain, Docket No. 0571417 (July 28, 1998, Aurigemrna,J.) (CUTPA inapplicable to accountants) and Hendricks Associates, LLC v.Old Lyme Marina, Inc., Superior Court, judicial district of New London, Docket No. 0546496 (April 26, 2001, Robiana, J.), (CUTPA inapplicable to an engineer and land surveyor). For the reasons articulated in all of these cases, Shoreline's CUTPA claim against Jansen Rogan is inappropriate.
Notwithstanding the Haynes rule, Shoreline also has not pleaded the substantial aggravating circumstances attending a negligence claim that are necessary for recovery under CUTPA. See Thames River Recycling, Inc.v. Gallo, 50 Conn. App. 767, 784 (1998). Shoreline's claims of negligence are set forth in the first and second counts of the complaint, as amended. Mere negligence, without more, does not violate CUTPA, and mere negligence is what is asserted in those pleadings. The motion for summary judgment as to the sixth count is granted.
 CONCLUSION
The motion for summary judgment as to the first, second, third and fifth counts is denied. The motion for summary judgment as to the fourth and sixth counts is granted.
ROBERT F. McWEENY, J.